IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROBYNNE A. FAULEY, an individual, | Civ. No. 3:13-cv-00581-AC |
| Plaintiff, | FINDINGS & RECOMMENDATIONS |
| v. | |
| WASHINGTON MUTUAL BANK, FA; RESIDENTIAL FUNDING COMPANY, LLC; DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE; LNV CORPORATION; and DOES 1-20, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

This case arises out of a dispute between plaintiff Robynne A. Fauley ("Fauley") and four mortgage servicing companies. Fauley alleges that each defendant committed unfair trade practices and fraud, and seeks a declaration of rights and an injunction against foreclosure with respect to the property located at 12125 SE Laughing Water Rd., Sandy, OR ("Subject Property"). Presently

1
FINDINGS & RECOMMENDATIONS                                                                [RMD]

before the court are defendant LNV Corporation's ("LNV Corp.") request for judicial notice, motion to dismiss all of Fauley's claims, motion to strike certain allegations, and, in the alternative, motion for a more definite statement.

*Background*

On June 14, 2002, Fauley signed a deed of trust ("DOT") giving Washington Mutual Bank, FA ("WaMu") a security interest in the Subject Property in exchange for a loan of $330,000.00. (First Amended Complaint ("Compl"). Ex. A at 1, 8.) On July 29, 2002, WaMu assigned the DOT to Deutsche Bank Trust Company Americas as Trustee ("Deutsche Bank"). (Compl. Ex. C at 1.) Deutsche Bank recorded the assignment on April 3, 2003. (*Id*.) Deutsche Bank subsequently attached a note allonge to the original mortgage agreement which purported to amend the mortgage agreement and allow Residential Funding Company, LLC ("Residential") to receive Fauley's future payments. (Compl. Ex. B at 1.) There is no evidence on the record that either party to the note allonge recorded the instrument, and the document does not reference a date of execution. (*Id*.)

At this point, the chain of title for the DOT becomes muddled. In April 2007, Residential assigned the DOT back to WaMu, and WaMu recorded the assignment on May 5, 2007. (Compl. Ex. E at 1.) Although WaMu was the most recent assignee of record, on October 17, 2008, Deutsche Bank executed a "Corrective Assignment of Deed of Trust" conveying the DOT to Residential. (Compl. Ex. F at 1-3.) Residential recorded the assignment on October 31, 2008, and immediately assigned the DOT to LNV Corp. (Compl. Ex. G at 1.) However, Residential and LNV Corp. amended and rerecorded the assignment on April 17, 2012 because of a defect in the original assignment instrument. (Compl. Ex. H at 1-2.)

After Fauley executed the mortgage, she experienced financial difficulties. She ceased payment on the mortgage and filed a Chapter 7 Bankruptcy in 2005. (Def.'s Req. for Judicial Notice Ex. 1 at 1.) During the Chapter 7 case, Deutsche Bank filed, and the bankruptcy court granted, a motion for relief from the automatic stay on the Subject Property. (Def.'s Req. for Judicial Notice Exs. B, C.) In 2007, the bankruptcy court converted Fauley's Chapter 7 case into a Chapter 13 bankruptcy. (Def.'s Req. for Judicial Notice Ex. D at 1.) The bankruptcy judge approved Fauley's Chapter 13 plan, but granted LNV Corp. relief from the automatic stay because Fauley no longer held any equity in the Subject Property. (Def.'s Req. for Judicial Notice Ex. G at 2, Ex. I at 1.) In 2012, the bankruptcy court dismissed Fauley's Chapter 13 case. (Def.'s Req. for Judicial Notice Ex. D at 10.)

In early 2013, Fauley filed this case in Oregon state court seeking damages from WaMu, Residential, Deutsche Bank, and LNV Corp. for fraud and unfair trade practices during their handling of her mortgage. Fauley also sought a declaratory judgment to determine the rightful owner of the note and DOT, and an injunction against foreclosure on the Subject Property. LNV Corp. removed the case to federal court and now moves to dismiss all claims against it and strike Fauley's claims for relief or, in the alternative, require Fauley to make more definite the claims in her complaint.

*Legal Standards*

I. Motion to Dismiss Under FED.R.CIV.P. 12(b)(6).

Federal Rule of Civil Procedure 8 requires that complaints in federal court consist of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Pleadings need not contain detailed factual allegations, but the plaintiff must provide more than "labels and

3

conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). However, a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Id.* at 556.

On a motion for failure to state a claim, the court is limited in the evidence it may consider. *Am. Family Ass'n, Inc. v. City & County of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). The court may consider the pleadings themselves, exhibits that are physically attached to the complaint, and matters of which the court may take judicial notice. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). For all other factual matters, the court must assume all allegations in the complaint are true and draw all "reasonable inferences in favor of the nonmoving party." *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992).

II. Motion for Judicial Notice Under FED. R. EVID. 201.

Under Federal Rule of Evidence 201, the court may take judicial notice of facts (1) that are generally known within the court's jurisdiction; or "(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Courts readily take judicial notice of "undisputed matters of public record, and documents on file in a court." *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

III. Motion to Strike Under FED. R. CIV. P. 12.

On motion of a party, the court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). An allegation is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other*

*grounds,* 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Further, when ruling on a motion to strike, the court views the pleadings in the light most favorable to the non-moving party. *Computer Stores Nw., Inc. v. Dimwell Tech., Inc.,* No. CV–10–284–HZ, 2011 WL 2160931, at *4 (D. Or. May 31, 2011).

IV.  Motion for More Definite Statement Under FED. R. CIV. P. 12.

A court may grant a motion for a more definite statement if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Mere vagueness generally is not grounds for dismissal. *Harman v. Valley Nat. Bank of Ariz.,* 339 F.2d 564, 567 (9th Cir. 1964). If a complaint is sufficient under a motion for failure to state a claim under Rule 12(b)(6), a motion for more definite statement is an alternative device to clarify an otherwise vague and indefinite claim. *Bowles v. Glick Bros. Lumber Co.,* 146 F.2d 566, 568 (9th Cir. 1945).

*Discussion*

LNV Corp. moves to dismiss all of Fauley's claims and moves to strike certain portions of Fauley's complaint, or in the alternative, moves for a more definite statement. LNV Corp. also requests judicial notice of certain documents.

I.   Motion for Judicial Notice Under FED. R. EVID. 201.

In its motion for judicial notice, LNV Corp. asks the court to take judicial notice of the following documents: (1) The PACER docket sheet from Fauley's Chapter 7 Bankruptcy case filed October 12, 2005; (2) Deutsche Bank's motion for relief from the automatic stay filed in the Chapter 7 case on July 28, 2009; (3) The bankruptcy court order granting Deutsche Bank's motion for relief from the Chapter 7 automatic stay; (4) The PACER docket sheet from Plaintiff's Chapter 13 bankruptcy case filed September 11, 2007; (5) Fauley's proposed Chapter 13 bankruptcy plan; (6)

5
FINDINGS & RECOMMENDATIONS                                                                                        [RMD]

The Bankruptcy court order confirming the Chapter 13 plan; (7) LNV Corp.'s motion for relief from the Chapter 13 automatic stay filed June 11, 2012; (8) Fauley's response to LNV Corp.'s motion for relief from the Chapter 13 automatic stay; and (9) The bankruptcy court order granting LNV Corp.'s motion for relief from the Chapter 13 automatic stay. (Def.'s Mot. for Judicial Notice at ¶¶ 1-9.) LNV Corp. also requests in its memorandum in support that the court take judicial notice of the fact that it is a wholly owned subsidiary of Beal Bank USA, an FDIC insured financial institution.

The court grants all of LNV Corp.'s requests for judicial notice because each document meets Rule 201's requirements. First, the motions and orders filed in the bankruptcy court are matters of public record that are beyond dispute. Thus, the court takes judicial notice of all nine documents attached to LNV Corp.'s motion for judicial notice. Second, the Corporate Disclosure Statement LNV Corp. filed in this court for the present action states, "LNV [Corp.] is a Nevada corporation and wholly owned subsidiary of Beal Bank USA, a Nevada corporation and FDIC-insured financial institution . . . ." Taking judicial notice of facts provided in a Rule 7.1 disclosure form is not without precedent, and Fauley does not argue that LNV Corp.'s subsidiary status is subject to reasonable dispute. *See Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp.2d 842, 849 (S.D. Ohio 2007) (taking judicial notice of facts as stated in a corporate disclosure statement). Therefore, because it is a certification made in a document filed in this case, the court will take judicial notice of the fact that LNV Corp. is a wholly owned subsidiary of an FDIC insured financial institution.

II. Motion to Dismiss Under FED.R.CIV.P. 12(b)(6).

    *A. Uniform Unfair Trade Practices Act Claims*

Fauley alleges that WaMu, Residential, Deutsche Bank, and LNV Corp. (collectively "Defendants") are liable for damages under the Oregon Uniform Unfair Trade Practices Act ("UTPA"). The UTPA subjects businesses to liability for certain unfair or dishonest business practices and commercial behavior. LNV Corp. requests that the court dismiss LNV Corp. as a defendant under all of Fauley's UTPA theories.

        1. Liability Under OR. REV. STAT. § 646.638.

Fauley's first theory of liability under the UTPA arises out of OR. REV. STAT. § 646.638. That statute provides:

> Except as provided . . . a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper.

OR. REV. STAT. § 646.638. Section 646.608, in turn, contains an expansive list of unlawful trade practices including, but not limited to, "[p]ass[ing] off real estate, goods or services as those of another[,]" and causing "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." OR. REV. STAT. § 646.608.[1]

A loss is "ascertainable" if it is "capable of being discovered, observed, or established." *Scott v. W. Intern. Surplus Sales, Inc.,* 267 Or. 512, 515 (1973). The loss need not be quantitatively large, and courts have found losses as small as $2.00 to be quantitatively ascertainable. *See Crooks*

---

1 OR. REV. STAT. § 646.608 was amended in 2013 by Act of June 26, 2013, ch. 493, H.B. No. 2059, 77th Leg. §§ 4-6, but there is no indication that the legislature intended the amendment to have retroactive effect.

*v. Pay Less Drug Stores Nw., Inc.,* 285 Or. 481, 487 (1979). However, regardless of the quantity of the plaintiff's loss, a causal link between the plaintiff's loss and the defendant's actions must exist to state a viable UTPA claim. *Paul v. Providence Health Sys.-Oregon*, 237 Or. App. 584, 600-602 (2010).

In *Paul*, the defendant health insurance company assured its clients that sensitive client data held by the defendant would be stored in a secure manner. *Id*. at 586-87. However, one of defendant's employees left discs containing the sensitive information in his car, from which the discs were stolen. *Id*. Plaintiffs brought a class action suit and alleged that the defendant committed unfair trade practices by misrepresenting the safety of their data. *Id.* at 587. Plaintiffs claimed that they suffered ascertainable losses through fees associated with changing social security numbers, canceling credit cards, and running credit reports, as well as attorney fees. *Id.* The court held that these were not ascertainable losses because they did not result directly from the defendant's misrepresentation. *Id*. at 600. Instead, they were losses incurred to prevent a threatened ascertainable loss. *Id*.

Under *Paul*, only some of Fauley's alleged losses are ascertainable. The damage to Fauley's credit score, loss of payments on the mortgage, and loss of her cash deposit are "capable of being discovered, observed, or established" and are the type that flow directly from unfair trade practices. Fauley's attorney, consultant, and expert witness fees, however, are losses incurred only as a result of this litigation, which under *Paul*, are not recoverable under the UTPA.

Although Fauley alleges ascertainable losses she fails to allege facts which put LNV Corp. on notice of the causal relationship between the Defendants' unfair business practices and Fauley's ascertainable losses. In Count I of her complaint, Fauley alleges, without elaboration or factual

support, that she suffered damages "as a result of the foregoing" unfair business practices. Causation is an essential element of an UTPA claim under § 646.638, and Fauley's failure to plead causation in sufficient detail denies her claim the requisite plausibility. Therefore, the court should grant LNV Corp.'s motion to dismiss Fauley's § 646.638 claim without prejudice and allow Fauley leave to amend her complaint.

        2.  Unfair Trade Practices Under OR. REV. STAT. § 86A.103.

Fauley next claims that LNV Corp. conducted residential mortgage transactions in Oregon without a license in violation of OR. REV. STAT. § 86A.103. She argues that all mortgage transactions in which LNV Corp. participated, including recordation of the deed of trust, "are void in *ab initio*" because LNV Corp. was not a licensed residential mortgage broker in Oregon. LNV Corp. claims that it is not subject to the requirements of §86A.103 because it is a wholly owned subsidiary of an FDIC insured financial institution, and thus, exempt under OR. REV. STAT. § 86A.100.

In Oregon "[i]t is unlawful for any person to engage in residential mortgage transactions . . . unless the person is licensed." OR. REV. STAT. § 86A.103. Section 86A.103 defines "residential mortgage transaction" as "the business of a mortgage banker or mortgage broker and involving a residential mortgage transaction[s]" involving real estate in Oregon. At the time LNV Corp. entered into the residential mortgage transaction, § 86A.100 defined "mortgage banker" to exclude "the subsidiaries and affiliates" of FDIC insured financial institutions. However, in June 2013, the Oregon Legislature amended that section to significantly narrow the scope of organizations excluded from the requirements of §86A.103. Subsidiaries of FDIC insured financial institutions are no longer excluded from the statute's reach.

Because the underlying events all occurred prior to the statute's amendment, the determinative question is whether the amendments removing subsidiaries of financial institutions from the exemption are retroactive. Unless the legislature "signals an intention to apply an amendment retrospectively," courts must assume the legislature intended statutory amendments to apply only to cases arising after the effective date of the amendment. *Black v. Arizala*, 337 Or. 250, 271 (2004). In particular, the court generally should not give retroactive effect to statutory amendments if doing so would "impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Id.*, *quoting Derenco v. Benjamin Franklin Fed. Sav. and Loan,* 281 Or. 533, 537 n.7 (1978).

Here, there is no legislative intent to apply this amendment retroactively. The legislature did not write a retroactivity clause into the June 2013 statute amending Section 86A.100. In fact, the statute assigns duties to parties to certain loan transactions with reference to federal regulations "as in effect on the effective date of this 2013 Act." Act of June 4, 2013, ch. 268, H.B. No. 2239. Because there is no evidence suggesting a legislative intent to retroactively apply the amendments, subsidiaries of financial institutions were exempt from the residential mortgage licensing requirement when the events giving rise to the present cause of action arose.

The court already has taken judicial notice that LNV Corp. is a wholly owned subsidiary of an FDIC insured financial institution. Because of its subsidiary status, LNV Corp. was not a "mortgage banker" when it made the mortgage transactions at issue, and is not subject to § 86A.103's licensing requirements. As a matter of law, Fauley cannot state a § 86A.103 claim against LNV Corp., and the court should dismiss Fauley's § 86A.103 claim.

3. Imputation of Other Defendant's Unfair Trade Practices.

Fauley's final theory for UTPA relief claims that LNV Corp. is liable under the UTPA even if it is an innocent assignee. Fauley argues that the securitization of her mortgage debt gave rise to a claim under the UTPA, and that under OR. REV. STAT. § 79.0404, she may assert all claims and defenses against LNV Corp. that she could assert against the other defendants. Fauley argues that even if LNV Corp. did not itself commit unfair trade practices, her claim against LNV Corp. may proceed so long as one of the other defendants committed an unfair trade practice. The court disagrees.

Unless a debtor agrees to waive claims or defenses, "the rights of an assignee are subject to . . . any [ ] defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment . . . ." OR. REV. STAT. § 79.0404(1). Subsection (2) further provides that a debtor's claims and defenses may be asserted against an assignee "only to reduce the amount the account debtor owes." This section may be relevant to Fauley's claim for declaratory relief, but § 79.0404 does not impute UPTA liability to innocent assignees. Thus, Fauley may not recover UPTA damages from LNV Corp. on the basis of WaMu's, Residential's, or Deutsche Bank's unfair trade practices. Because Fauley has pleaded no facts under which LNV Corp. could be liable to Fauley under the UPTA, the court should dismiss LNV Corp. as a defendant with respect to Fauley's UTPA claim.

*B. Fraud*

Fauley concedes in her memorandum in opposition that her allegations of fraud in the First Amended Complaint do not meet the heightened particularity requirements of FED. R. CIV. P. 9(b). She requests the court grant leave to amend the claim so she may conform her allegations to Rule

9(b)'s heightened pleading standards. The court should freely grant parties leave to amend when justice so requires. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892-93 (9th Cir. 2010). In its discretion, a court nonetheless may deny leave to amend because of "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment." *Id.* at 892, *quoting Forman v. Davis*, 371 U.S. 178, 182 (1962).

Fauley originally filed her case in Oregon state court, where the pleading standards for fraud are less stringent than in federal court. Because none of the *Forman* factors apply to plaintiff's First Amended Complaint, the court should allow Fauley to amend her the complaint to meet Rule 9(b)'s requirements and state more particularly each individual defendant's alleged fraudulent actions.

*C. Declaratory Relief*

Fauley also claims she is entitled to a declaratory judgment regarding the parties' respective rights to the Subject Property. LNV Corp. argues that Fauley's complaint fails to state a cause of action for a declaratory judgment because her complaint does not present a live case or controversy that is ripe for judicial determination. The court finds Fauley's declaratory judgment claim is sufficiently stated.

Under the Declaratory Judgment Act, district courts "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). So long as the controversy meets constitutional justiciability requirements, the court has discretion to exercise jurisdiction over the matter in which a plaintiff seeks declaratory relief. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005). The court analyzes the propriety of hearing a declaratory claim with an eye toward (1) avoiding needless

determination of state law issues; (2) discouraging litigants from forum shopping; and (3) avoiding duplicative litigation. *Id.*, *quoting Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

Because none of the concerns articulated in *Robinson* are relevant in this case, the court should exercise jurisdiction over Fauley's state law declaratory judgment claim because it presents a live controversy. Here, Fauley alleges that, due to alleged imperfections in the chain of title to the DOT and note, LNV Corp. is not entitled to payment. On a motion to dismiss, the court must assume that all allegations in the complaint are true and draw all reasonable inferences therefrom in favor of the non-moving party. Under the allegations in the complaint, Fauley could prevail on her claim that LNV Corp. is not the true holder of the DOT and note because of the imperfections in chain of title. Furthermore, because the declaratory dispute centers on the amount Fauley owes LNV Corp., the claim and defense imputation provision in OR. REV. STAT. §79.0404 will likely be relevant. If Fauley adequately states UPTA claims on amendment and proves the elements of a claim or defense against any of the defendant-assignors of her DOT, those claims and defenses could impute to LNV Corp. — reducing or wholly eliminating the debt Fauley owes. In short, Fauley pleads a sufficiently plausible claim for declaratory relief, and the court should deny LNV Corp.'s motion to dismiss and exercise jurisdiction over Fauley's declaratory judgment claim.

### D. Injunctive Relief

LNV Corp. next asks the court to dismiss Fauley's "action for [permanent and preliminary] injunctive relief." Count IV of Fauley's First Amended Complaint purports to be "an action for [i]njunctive [r]elief." (Compl. at ¶ 63.) However, a permanent injunction is a form of relief the court grants when a plaintiff succeeds on a substantive cause of action. Before addressing the merits

of LNV Corp.'s motion to dismiss, the court must answer the threshold question of whether a "claim for injunctive relief" is a "claim" susceptible to a motion to dismiss under FED. R. CIV. P. 12(b)(6).

      1. Permanent Injunction

The purpose of a 12(b)(6) motion to dismiss is to demonstrate that a "claim for relief" is deficient because "there is no cognizable legal theory" or there are insufficient "facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Serv.*, *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Whether the court may dismiss a prayer for injunctive relief on a 12(b)(6) motion depends on whether that prayer for injunctive relief is a "claim" as contemplated by the Federal Rules of Civil Procedure. Rule 8 requires that a complaint contain (1) a statement of the court's jurisdiction; "(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Thus, Rule 8 distinguishes a "claim" and "demand for relief" by its text.

Nonetheless, courts entertain and periodically decide to dismiss claims for injunctive relief. *See e.g., Miller v. Thomas*, No. 03:10-cv-00376-HU, 2012 WL 1935486, at *1 (D. Or. Feb. 22, 2012) *adopted by Miller v. Thomas*, No. 3:10-cv-00376-HU, 2012 WL 1941738, at *4 (D. Or. May 23, 2012) (dismissing moot claim for injunctive relief). However, the court's analysis in these cases almost always focuses on one of three grounds for dismissal. First, whether the plaintiff's substantive cause of action alleges a cognizable legal theory which would entitle the plaintiff to injunctive relief. *D'Ambrosio v. Sterling Sav. Bank*, No. 3:12-CV-01826-BR, 2013 WL 2902715, at *4-*5 (D. Or. June 13, 2013). Second, whether the plaintiff can, as a matter of law, seek injunctive relief under the particular legal theory alleged in the complaint. *See Redding v. Dhaliwal*, No. CV 10-998-PK, 2011 WL 6153132, at *10-*11 (D. Or. Oct. 4, 2011), *adopted by Redding v.*

*Dhaliwal*, No. CV-10-998-PK, 2011 WL 6153191, at *3 (D. Or. Dec. 9, 2011) ("Supreme Court jurisprudence establishes that injunctive and other equitable remedies may nevertheless sometimes be available in connection with claims brought under *Bivens* . . . . [Thus,] the federal defendants' motion to dismiss should be denied to the extent premised on the theory that Redding may not seek injunctive relief from any of the federal defendants."). Third, whether justiciability issues of standing and mootness allow the court to address the plaintiff's request for injunctive relief. *See 222 E. Chestnut St. Corp. V. Lakefront Realty Corp.*, 256 F.2d 513, 517 (7th Cir. 1958) (Plaintiff was not an "aggrieved party" under the statute and, therefore, had "no right of action for injunction . . . ."). S*ee also Koch v. Jester*, 12-CV-613-BR, 2013 WL 6422279, at *7 (D. Or. Dec. 9, 2013) ("[T]he court concludes Plaintiff's claim for injunctive relief is moot, and, therefore, the Court grants Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief.").

Here, none of these three bases applies, as LNV Corp. seeks to dismiss Fauley's request for injunctive relief for failing to plead in her complaint facts sufficient to establish entitlement to an injunction under prevailing federal standards. In *Ogden River Water Users' Ass'n v. Weber Basin W. Cons.*, the Tenth Circuit granted a motion to dismiss a claim for injunctive relief on similar grounds. 238 F.2d 936, 942 (10th Cir. 1956). There, the court held that, because monetary damages were sufficient to compensate the plaintiff for any loss and the plaintiff failed to allege the necessary elements for an injunction, injunctive relief was inappropriate. *Id*. More recently, in *Vargas v. Wells Fargo Bank, N.A.*, a court in the Northern District of California took the opposite view and held that injunctive relief was a type of remedy and not a claim susceptible to a 12(b)(6) motion. No. C 12-02008 WHA, 2012 Wl 2931220, at *6 (N.D.Cal. July 18, 2012). There, as here, the plaintiffs presented their request for an injunction as a "claim for injunctive relief," but the court

construed the claim as a prayer for relief to be awarded if the plaintiffs succeeded on their contract claim. *Id*. As such, the court felt that "consideration of such relief [was] premature" and held that it would consider whether plaintiff was entitled to an injunction only after "plaintiffs prevail[ed] on a claim where such relief is appropriate." *Id*.

The court finds more persuasive the reasoning employed by the court in *Vargas*. A prayer for injunctive relief is similar to a "claim for relief" in that the relief is contingent on the plaintiff satisfying a test comprising four elements. Specifically, the plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. V. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The four-factor test applicable to permanent injunctions is almost identical to that applied to a request for a preliminary injunction, which, according to Rule 65, may be sought in a motion separate from the complaint. *Vargas*'s reasoning and Rule 65's textual distinction between a claim for relief and a prayer for relief, the court is convinced that Fauley's "claim for injunctive relief" is actually a prayer for relief which the court may consider only after adjudicating her substantive causes of action. Therefore, the court concludes that Fauley's request for a permanent injunction is not a "claim for relief" susceptible to a motion to dismiss for failure to state a claim. Thus, LNV Corp.'s motion to dismiss should be denied on this point.

### 2. Preliminary Injunction

LNV Corp. also asks the court dismiss Fauley's request for a preliminary injunction. Fauley presents her request for preliminary injunctive relief as a substantive cause of action (Count IV of

the First Amended Complaint), but has not yet filed a separate motion for preliminary injunction. Like her request for a permanent injunction, the court construes Fauley's "claim for [preliminary] injunctive relief" as a prayer for relief. However, even if the court could procedurally dismiss a prayer for injunctive relief, LNV's motion to dismiss Fauley's request for a preliminary injunction would fail for lack of justiciability.

Rule 65 governs the procedures of preliminary injunctions and temporary restraining orders ("TROs"). Rule 65 specifies that the court may grant a preliminary injunction upon notice to the opposing party and may grant a TRO only if the moving party demonstrates based on "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury . . . will result . . . ." FED. R. CIV. P. 65(b)(1)(A). Rule 65 does not reference "verified complaints" when discussing the court's consideration of a preliminary injunction, but notes only that, when the court grants a TRO without notice to the defendant, "the motion for a preliminary injunction must be set for hearing at the earliest possible time . . . ." FED R. CIV. PRO. 65(b)(3). Based on the language of Rule 65, the court concludes that it may consider a request for a preliminary injunction only when the plaintiff files a motion for a preliminary injunction. Here, Fauley has not done so, and the merits of Fauley's request for a preliminary injunction are not yet before the court. As a result, LNV Corp.'s motion to dismiss Fauley's request for a preliminary injunction is premature.

III. Motion to Strike Under FED. R. CIV. P. 12.

LNV Corp. moves to strike several allegations from Fauley's First Amended Complaint. It asks that the court strike the following material because they are "unsupported and inaccurate": page 2 lines 1-7 and ¶¶ 4, 24, 39, 56, 65, and 68. All of the allegations LNV Corp. asks the court to strike involve WaMu and its alleged fraudulent actions, but LNV Corp. fails to explain the basis for

17
FINDINGS & RECOMMENDATIONS                                                                                          [RMD]

striking these allegedly "unsupported and inaccurate" portions of the complaint under Rule 12(f). The allegations LNV Corp. highlights are not immaterial or irrelevant, as they go directly to Fauley's claims of unfair trade practices and fraud against the other named defendants, nor are they scandalous such that they cast LNV Corp. in a disgraceful light. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 431-32 (9th Cir. 2011) ("Rule 12(f) draw[s] from common law historical roots and premises, that is, the protection of parties from the improper use of judicial filings to broadcast scandalous or defamatory material . . . [and] is applicable only when a filing is made for an improper purpose.").

LNV Corp. also moves to strike Fauley's prayer for damages and injunctive relief. In *Whittlestone Inc. v. Handi-Craft Co.*, the Ninth Circuit held that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for [relief] on the basis it is precluded as a matter of law." 618 F.3d 970, 976 (9th Cir. 2010). There, the court used a plain meaning approach to interpret Rule 12(f), and determined that a prayer for damages does not fall within any of the grounds for striking an allegation. *Id.* at 973. The court, therefore, should not strike the abovementioned allegations and prayers for relief.

IV. Motion for a More Definite Statement Under FED. R. CIV. P. 12.

In the alternative, LNV Corp. requests that the court require Fauley make more defintie and certain her claims. When a complaint is vague and ambiguous but does not fail under a motion to dismiss, "the judge may in his discretion . . . require such detail as may be appropriate in the particular case, and may dismiss the complaint if his order is violated." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

Whether or not the court dismisses Fauley's claims, it should grant LNV Corp.'s motion for a more definite statement on any claims that remain. Counts I and II of Fauley's First Amended Complaint allege bad faith behavior in such vague terms that defendants cannot reasonably respond. In Count I, Fauley repeatedly alleges that defendants committed unlawful trade practices by "identifying or allowing to identify Defendant WaMu as the 'lender' when they knew WaMu was nothing more than a naked nominee whose name was rented . . . ." In Count II, Fauley alleges that Defendants "have made numerous misrepresentations consisting of suggestion as a fact, which are not true, while all along the Defendants knew such fact to be false." Count III is similarly unclear. Although the exhibits to her complaint establish ambiguity in the chain of title for the DOT and note to the Subject Property, the allegations in Fauley's claim for declaratory relief are too vague for the defendants to respond. Paragraph 56 of Fauley's complaint states that "[o]n or about June 2002, Plaintiff offered to enter into contracts identified as the Note and Deed of Trust, to obtain the loan from WaMu; however, their acceptance was different than what Plaintiff had offered and Plaintiff did not receive consideration for the contract." Further, her claim for declaratory relief fails to cite the very exhibits establishing ambiguity in the DOT's chain of title which could give rise to declaratory relief in her favor. Therefore, the court should grant LNV Corp.'s motion for a more definite statement for any claims remaining after deciding the motion to dismiss.

*Conclusion*

For the reasons stated above, LNV Corp.'s motion for judicial notice (Dkt. #10) should be GRANTED; its motion to dismiss Fauley's UTPA and common law fraud claims (Dkt. #6) should be GRANTED without prejudice so Fauley can refile a complaint that conforms to federal pleading

standards; LNV Corp.'s motion to dismiss the equitable relief claims and motions to strike should be DENIED, and its motion for a more definite statement should be GRANTED.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 5th, 2014 If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 19th day of February, 2014.

                                                                 /s/ John V. Acosta
                                                            JOHN V. ACOSTA
                                      United States Magistrate Judge